[No. 7513.   Decided April 13, 1909.]

VICTOR PIERSON *et al.*, *Appellants*, v. NORTHERN PACIFIC
RAILWAY COMPANY, *Respondent.*[1]

CARRIERS—LIVE STOCK—NEGLIGENCE—VIOLATING LAW REQUIRING
UNLOADING. A railroad company is guilty of negligence in carrying
horses that had already been on the road ten hours, and continuing
the journey so as to make forty-five consecutive hours of travel with-
out unloading, feeding, or watering, after repeated requests therefor,
although it may not have been notified of the time they were on the
road before it accepted the shipment; and irrespective of the Federal
statute forbidding more than 28 consecutive hours' travel without
unloading.

SAME—DEATH OF HORSES—PROXIMATE CAUSE. Negligence of a
railroad company in carrying horses for forty-five consecutive hours
without unloading for rest, food or water, is the proximate cause of
their death, where they were so weakened and rendered susceptible
to attack by disease that they sickened and died when unwittingly
exposed to disease by their owners in endeavoring to bring them
back to a normal condition.

EVIDENCE—OPINIONS—NONEXPERT EVIDENCE AS TO CAUSE OF DEATH
OF HORSES. One who is possessed of only common knowledge on the
question is incompetent to give his opinion as to the cause of the
sickness and death of horses carried in violation of the Federal stat-
ute requiring unloading for rest, food, and water.

Appeal from a judgment of the superior court for Spokane
county, Kennan, J., entered April 18, 1908, in favor of the
defendant, upon granting a nonsuit, in an action to recover
for damages to horses transported.   Reversed.

*Hurn & Curtiss*, for appellants.

*Edward J. Cannon* and *Arthur B. Lee*, for respondent.

FULLERTON, J.—The appellants brought this action
against the respondent to recover damages caused, as they al-
leged, by the respondent's maltreatment of certain horses,
which the appellants shipped over the respondent's road.
They were nonsuited at the conclusion of their evidence in

[1]Reported in 100 Pac. 999.

chief in the court below, and appeal from the judgment entered against them.

The facts appearing in the record at the time the nonsuit was granted were, in substance, these: On the first days of August, 1906, Victor Pierson, one of the appellants, purchased from a ranchman living near Dillon, Montana, eighteen head of draft horses and one driving horse, intending them for use in the business of logging conducted by himself and his brother at Priest River, Idaho. The horses were taken from the ranches of the person from whom they were purchased on the day of August 6, 1906, and driven, a part of them eight miles and a part of them six miles, into Dillon, and loaded on an ordinary stock car about six o'clock in the afternoon of that day. From Dillon they were carried during the night of August 6th to Silver Bow, Montana, where they arrived in the early morning of August 7, probably between four and five o'clock. At that place the horses were turned over to the respondent for shipment to Sandpoint, Idaho, and were carried by the respondent to that point in the same car on which they were originally loaded. The shipment reached Sandpoint between three and four o'clock in the afternoon of August 8th, having been on the way upwards of forty-five hours. The animals were without food of any kind during the entire trip, and eleven of them were without water; the other eight having been given a small quantity at Reed's station, on the afternoon of August 7th, by Victor Pierson, who accompanied the shipment. Nor were the animals unloaded for rest, feed or water during the trip, although requests were made of the parties in charge of the train, and of the train dispatchers and station agents, at different points along the way, that the car be sent to the stock yards so that the animals could be taken out, rested, watered and fed.

On reaching Sandpoint, the animals were at once removed from the car and taken to a nearby barn, where they were given a small quantity of water. Later on another small

quantity of water was given them with a light feed of timothy hay, about five pounds to the team, and still later more water, but not any considerable quantity even at that time. It was testified that the water was pure, being taken from the stream out of which the inhabitants of Sandpoint obtained water for household purposes, and that the hay was very good, being bright and clean. The owners left the horses about eleven o'clock at night of the evening of their arrival, when they all seemed to be in good condition, other than that they appeared very tired, a symptom they had manifested when removed from the car and for a considerable time before their removal. One of the owners returned to the horses at four o'clock in the morning, when he found one of the animals down and suffering great pain. Effort was made at once to relieve it, but without success, and it died in the early morning. In the meantime others of the animals became sick in the same manner, until all of them were afflicted, and during the day and night following ten more of them died, although the aid of a vetcrinary surgeon was called, and such remedies as he prescribed administered. The animals dying were the ones, according to the testimony of Victor Pierson, that received no water while being carried on the car.

The evidence is not very clear as to the symptoms manifested by the horses preceding their death, but it can be gathered therefrom that they suffered great pain in the region of the bowels; that their breathing was hard and labored; that they had fever, and diarrhoea quite marked and severe. The animal, as the disease progressed, would throw himself and thrash about, beating and bruising his head, and soon become too weak to rise, when death would soon follow. A veterinary surgeon, called as an expert, although not the veterinary who attended the animals while sick, gave it as his opinion that the animals died of enteritis or gastro-enteritis, which he described as an inflammation of the intestinal tract, caused by some irritant taken with the food or drink. He stated further that this irritant could be either

chemical or bacterial, and would operate more readily and fatally on animals whose vitality was low by reason of their having been deprived of water and food for a considerable length of time; that the treatment accorded these animals after being taken from the car, while not the best, was good; and further, what obviously must be the case, that pure water and good hay, fed to an animal weak from fasting and fatigue, if not in undue quantities, will not hurt him.

That the evidence shows negligent treatment of these animals on the part of the railway company, we think cannot be gainsaid. Not only was there a violation of the Federal statutes, which forbids the confinement of animals in cars of the character on which these horses were shipped for a longer period than twenty-eight consecutive hours, without unloading the same for rest, water and feeding, but the time in which these animals were confined was so long, and so far without necessity, as to constitute negligence in the absence of a statute forbidding it. The respondent argues in this connection, it is true, that it does not appear that it was notified of the time the animals had been on the car before it reached Silver Bow, the point at which the respondent received the car. But the Federal statute covers this question. It provides that in estimating the time of such confinement the time during which the animals have been confined without rest on connecting roads shall be included; thus making it the duty of the connecting carrier to inquire concerning such time when the animals are received by it, if the fact does not appear on the way bills submitted to it. Moreover, in this case, there were repeated demands made by the owner to the company's agents and officers that the animals be rested. This of itself was sufficient to put the defendant on inquiry, even though nothing was said by the owner when making the demand as to the time the animals had then been on the car without rest. Clearly, therefore, there was negligence on the part of the respondent.

But it is said, and on this contention the trial court seems

to have rested its decision, there is no evidence tending to connect the negligence of the respondent with the death of the animals. In other words, it is not shown that the respondent's negligence was the proximate cause of the injury. We cannot think, however, that the evidence is thus barren. The proximate cause of an injury may, in general, be stated to be that act or omission which immediately causes the injury. It need not be the sole cause; it is enough if it is the efficient cause, the one that necessarily sets the other causes in operation.

"It is well settled that the mere fact that there have been intervening causes between the defendant's negligence and the plaintiff's injuries is not sufficient in law to relieve the former from liability; that is to say, the plaintiff's injuries may yet be natural and proximate in law, although between the defendant's negligence and the injuries, other causes, conditions, or agencies have operated, and when this is the case the defendant is liable. So the defendant is clearly responsible where the intervening causes, acts, or conditions were set in motion by his earlier negligence, or naturally induced by such wrongful act or omission, or even, it is generally held, if the intervening acts or conditions were of a nature the happening of which was reasonably to have been anticipated, though they may have been acts of the plaintiff himself." 21 Am. & Eng. Ency. Law (2d ed.), p. 490.

"To show that other causes concurred in producing or contributed to the result complained of is no defense in an action for negligence. There is, indeed, no rule better settled in the present connection than that the defendant's negligence, in order to render him liable, need not be the sole cause of the plaintiff's injuries." 21 Am. & Eng. Ency. Law (2d ed.), p. 495.

So in this case, if the negligence of the defendant so far lowered the vitality of these animals as to render them susceptible to attacks by disease, and that while in their weakened condition they were unwittingly exposed to disease by their owners in their endeavor to bring them back to a normal condition, and because of such exposure and their weakened condition, they sickened and died, the respondent's negligence

must be held to be so far a proximate cause of the injury as to render it liable for damages therefor. Whether or not the evidence justified this inference we think was a question for the jury. The evidence of the veterinary tended to show that the terrible results of the sickness of the animals was due to their lack of vitality, and this lack of vitality was clearly the result of the negligence of the respondent. We conclude, therefore, that the appellants made a *prima facie* case, and the court erred in withdrawing the case from the jury.

The court did not err in refusing to allow Victor Pierson to give his opinion as to the cause of the sickness and death of the horses. He was not shown to possess more than common knowledge on the question, and consequently was no more competent to draw a conclusion from the facts given in evidence than was the jury. The further questions discussed in the appellants' brief were not determined by the trial judge, and are not before us on this appeal.

The judgment is reversed and remanded for a new trial.

CROW, MOUNT, GOSE, PARKER, CHADWICK, DUNBAR, and MORRIS, JJ., concur.